AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT
### for the
### District of Kansas

FILED
U.S. District Court
District of Kansas

MAY 7 2026

Clerk, U.S. District Court
By_____Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

A forensic extraction obtained from a Motorola G 2025 seized from Mark Phillips on or about October 27, 2025, currently in the possession of the Sedgwick County Sheriff's Office, 141 West Elm, Wichita, KS, as further described on Attachment A

)
)
)
)
)
)
)

Case No. 26-M-6116-01-GEB

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A forensic extraction obtained from a Motorola G 2025 seized from Mark Phillips on or about October 27, 2025, currently in the possession of the Sedgwick County Sheriff's Office, 141 West Elm, Wichita, KS, as further described on Attachment A

located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2), 2252A(a)(3)(B), 2252A(a)(1), 2252A(a)(5)(B) | Distribution/receipt of child pornography; Distributes or solicits child pornography; Transportation of child pornography; Possession of child pornography |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Travis Putrah, SA, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7 May 2026 @ 11:33 am

_____
*Judge's signature*

City and state: Wichita, Kansas

Honorable Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Travis Putrah, being duly sworn, hereby deposes and states the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since September 2019. I am currently assigned to the HSI Resident Agent in Charge ("RAC") office in Wichita, Kansas.

   a. I have been responsible for investigating technology-facilitated child sexual exploitation crimes since 2021. In this role, I routinely work with the Kansas Internet Crimes Against Children ("ICAC") Task Force and investigate violations of federal criminal laws; to include offenses pertaining to the illegal production, distribution, receipt, and possession of child pornography (in violation of 18 U.S.C. § 2251, 2252, and 2252A).

   b. I have conducted over fifty federal child exploitation investigations involving violations of possession, distribution, receipt, and production of child pornography, the transportation of child pornography, the coercion/enticement of minors, and the transportation of minors for the purpose of criminal sexual activity. I have also assisted state and local partners with state investigations involving the sexual exploitation and sexual assault of minors.

   c. As such, I have become familiar with ways that child pornography is distributed, traded, and produced; including the use of electronic devices, various social media websites, messaging applications (e.g. Google, Kik, Instagram, Facebook, Snapchat, Discord, Telegram, Wire, Vector, Element, WhatsApp, etc.), peer-to-peer ("P2P") software (e.g. BitTorrent, µTorrent, qBittorrent) and cloud-based storage services (e.g. Dropbox, iCloud, MegaNZ, Synchronoss, etc.) to facilitate those crimes.

   d. As part of these investigations, I have drafted and executed search warrants on residential properties, vehicles, electronic devices, and electronic service providers. I have received training on handling electronic evidence, executing manual searches of electronic devices, and conducting forensic examinations utilizing forensic tools/software. I have extensive experience in leading interviews of persons who possess, distribute, and produce child pornography.

   e. Prior to my tenure as a Special Agent with HSI, I was employed as a Border Patrol Agent within the Department of Homeland Security ("DHS") from 2005 to 2019. From 2015 to 2018, I was assigned to the Federal Bureau of Investigations' ("FBI") Indian Country Task Force in Bemidji, Minnesota. My duties included investigating crimes of violence; to include homicides and assaults with deadly

weapons; sexual assaults of juveniles; human trafficking; trafficking of child pornography; illegal trafficking of firearms and explosives; arson; the manufacture, sale, and distribution of controlled substances; and the disruption/dismantling of violent gangs.

f. From 2018 to September 2019, I was assigned to the HSI Wichita, Kansas office as a Task Force Officer ("TFO"). While serving as an HSI TFO, I was responsible for investigating federal violations of the trafficking of controlled substances; the production and sale of fraudulent documents; violations of immigration law; the theft of intellectual property; and the trafficking of child pornography.

g. As a requirement for employment as an HSI Special Agent, I successfully completed a twelve-week Criminal Investigator Training Program ("CITP") located at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. At the conclusion of CITP, I also completed an additional twelve-week HSI Special Agent Training ("HSISAT") Academy. As part of the training at FLETC, I received extensive instruction in the areas of Customs law, Immigration law and Criminal law.

## PURPOSE OF THE AFFIDAVIT

1. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure in support of a search warrant for a **forensic extraction obtained from a Motorola G 2025 (referenced herein as TARGET EXTRACTION)**, currently in the possession of the Sedgwick County Sheriff's Office located at 141 West Elm, Wichita, Kansas.

2. The statements in this Affidavit are based on police reports, statements and information provided by other law enforcement officers involved in this investigation, and from my own observations made during the investigation. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of the federal violations listed below are located within the electronic device described in Attachment A.

## STATUTORY AUTHORITY

3.    This investigation concerns alleged violations relating to material involving the sexual exploitation of minors. More specifically violations of 18 U.S.C. § 2252A(a)(2) (distribution/receipt of child pornography); 18 U.S.C. § 2252A(a)(3)(B) (distributes or solicits child pornography); 18 U.S.C. § 2252A(a)(1) (transportation of child pornography); and 2252A(a)(5)(B) (possession of child pornography):

    a.    18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

    b.    18 U.S.C. § 2252A(a)(3)(B) prohibits promoting, presenting, distributing, or soliciting any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe that the material or purported material is or contains obscene visual depictions of a minor engaging in sexually explicit conduct or visual depictions of an actual minor engaging in sexually explicit conduct.

    c.    18 U.S.C. § 2252A(a)(1) prohibits knowingly transporting child pornography using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mail.

    d.    18 U.S.C. § 2252A(a)(5)(B) prohibits knowingly possessing, or accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

4.    The following definitions apply to this Affidavit and Attachment B:

    a.    "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

    b.    "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other

3

means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c. "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

d. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units; internal and peripheral storage devices such as fixed disks; external hard drives; "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer; and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g. "Hyperlink," as used herein, refers to an item on a web page or in a mobile application which, when selected, transfers the user directly to another location in a hypertext document or to some other web page or (part of) a mobile application.

4

h.  "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i.  An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.  The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k.  "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l.  "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

m.  "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

n.  A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks; RAM; "thumb," "jump," or "flash" drives; CD/DVDs; and other magnetic or optical media.

o.  "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address. URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

p.  "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

5

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

5. On or about October 26, 2025, United States (U.S.) Probation and Pretrial officers for the District of Kansas received a notification from electronic monitoring software utilized by their office that **Mark H Phillips (PHILLIPS)** may be in violation of his court issued probation conditions.

6. U.S. Probation officers routinely utilize electronic monitoring software to monitor electronic devices owned and operated by individuals who are supervised by federal probation officers, and who have court-ordered electronic monitoring restrictions.

7. During a review of the electronic monitoring software utilized to monitor **PHILLIPS'** Motorola G 2025 cellular telephone, probation officers were alerted that from September 2025 to October 2025, **PHILLIPS** was searching, querying and attempting to access websites and/or peer-to-peer networks that were associated with the following words and sentences: "PTHC[1] girl", "Age 13 or less", "Jailbait[2]" "Incest", "Yandex", "Torrent search engine", and "preteen sex sites". Probation officers believed that **PHILLIPS** was likely attempting to access child pornography using his Motorola G 2025 cellular telephone.

8. On or about October 27, 2025, U.S. probation officers seized **PHILLIPS'** Motorola G 2025 cellular telephone. This cellular telephone was turned over to the Sedgewick County Sheriff's Office (SCSO) Investigative Division for analysis.

---

[1] PTHC as an acronym for "preteen hardcore". This term is commonly used as a label in illicit networks to describe child sexual abuse material (CSAM), as known as child pornography, involving prepubescent children.

[2] Jailbait is slang for a person who is younger than the legal age of consent for sexual activity. This term is commonly used as a label in illicit networks to describe child sexual abuse material (CSAM), as known as child pornography, involving prepubescent children.

9.    On or about November 6, 2025, SCSO forensic investigators obtained **PHILLIPS'** Motorola Moto G 2025 from probation officers. According to SCSO forensic investigators, a passcode was not supplied by probation officers that would allow them to unlock **PHILLIPS'** cellular telephone and allow them to obtain a forensic extraction from the device. To access the Motorola Moto G 2025 cellular telephone, SCSO forensic investigators had to utilize a specialized mobile forensic tool designed for law enforcement to extract encrypted data, more specifically the passcode, from the device.

10.    According to SCSO's mobile forensic tool's logs, a passcode was obtained by the forensic tool on or about December 22, 2025. SCSO forensic investigators utilized that passcode to unlock **PHILLIPS'** Motorola Moto G 2025 on or about Jan 5, 2026. This allowed SCSO forensic investigators to start the process of obtaining a forensic extraction, the **TARGET EXTRACTION**, from **PHILLIPS'** device.

11.    During a review of the **TARGET EXTRACTION**, SCSO forensic investigators located images of CSAM[3], indicating that **PHILLIPS** had been in possession of child pornography.

12.    On or about February 23, 2026, U.S. Probation officers were notified that SCSO had located CSAM on **PHILLIPS'** device.

13.    On or about March 27, 2026, I was contacted by U.S. Probation officers and asked if HSI would conduct an investigation into potential federal violations committed by **PHILLIPS** while on federal probation. I was informed that SCSO had located what they believed was CSAM on his device. In an abundance of caution, I have not reviewed the **TARGET EXTRACTION** obtained by SCSO forensic examiners, in anticipation of obtaining a federal search warrant that

---

[3] The term "child pornography" is currently used in federal statutes and is defined as any visual depiction of sexually explicit conduct involving a person less than 18 years old. While this phrase still appears in federal law, "child sexual abuse material" (CSAM) is preferred, as it better reflects the abuse that is depicted in the images and videos and the resulting trauma to the child.

7

would allow me to search the **TARGET EXTRACTION** for additional contraband and evidence, fruits, and instrumentalities, further described in Attachment B, for violations of federal child pornography laws.

14.    While conducting records checks, I learned that **PHILLIPS'** court ordered restrictions stem from a 2014 federal conviction in the United States District Court for the District of Kansas. According to reports, in 2012 HSI, in collaboration with the Serbian Ministry of Interior, uncovered several websites, based in the United States, that were involved in the distribution of child pornography. **PHILLIPS** was identified as an individual who had received child pornography from these websites. **PHILLIPS** was indicted for violations of 18 U.S.C. § 2252A(a)(2); receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B); possession of child pornography.

15.    On or about June 30, 2014, **PHILLIPS** was convicted in the United States District Court for the District of Kansas and ordered imprisoned for a total term of 87 months, followed by 120 months of supervised release.

16.    During a search of law enforcement databases commonly utilized by law enforcement, I also learned that the Kansas Bureau of Investigations (KBI) had an active child sexual abuse investigation involving **PHILLIPS**.

17.    According to KBI reports, on or about June 17, 2025, an IP address associated to **PHILLIPS** was observed downloading child pornography files utilizing a peer-to-peer file sharing application. I believe it is probable that additional contraband and evidence, fruits and instrumentalities of these crimes of receipt of child pornography will be found on the **TARGET EXTRACTION**.

8

18.    Due to the facts presented above, I believe that the **TARGET EXTRACTION**, further described in Attachment A, contains additional contraband and evidence, fruits, and instrumentalities, further described in Attachment B, of violations of 18 U.S.C. § 2252A(a)(2) (distribution/receipt of child pornography); 18 U.S.C. § 2252A(a)(3)(B) (distributes or solicits child pornography); 18 U.S.C. § 2252A(a)(1) (transportation of child pornography); 2252A(a)(5)(B) (possession of child pornography). I respectfully request that a search and seizure warrant be issued for the **TARGET EXTRACTION**.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

19.    Based on my experience in the investigation of computer-related crimes and the discussions I have had with other investigators who have experience in investigations related to child exploitation, I know the following:

    a.    Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

    b.    Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone, or transferred to external storage devices, such as a USBC. These memory cards and USBC devices are often large enough to store thousands of high-resolution photographs or videos.

    c.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types - to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer - can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an

9

individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

d. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

e. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f. Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide email services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g. A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications, also referred to as "apps." Apps consist of software downloaded onto mobile devices that enable users to perform a variety of tasks – such as engaging in online chat, sharing digital files, reading a book, or playing a game – on a mobile device. Individuals commonly use such apps to receive, store, distribute, and advertise child pornography, to interact directly with other like-minded offenders or with potential minor victims, and to access cloud-storage services where child pornography may be stored.

h. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional. Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

10

20. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who produce and access online child sexual abuse and exploitation material:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[4]

---

[4] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern

11

f.  Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain contact information (e.g. online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

g.  Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

h.  In my training and experience conducting child exploitation investigations, I am aware that persons who receive, possess, and distribute images of child pornography sometimes utilize email accounts and online "cloud" storage to correspond with other persons sharing similar interests; and that those persons sometimes utilize those email accounts and online "cloud" storage to receive, transmit and store images of child pornography. Cloud-based storage can be utilized by child pornography distributors/possessors to add a layer of anonymity to their actions, as well as attempt to conceal the trading and collecting of child exploitation material from law enforcement.

i.  Such individuals use online chat rooms, gaming platforms, and private servers as a way to interact with minors so they can entice and coerce the minors to produce videos and pictures of child pornography.

21.  I submit that there is probable cause to believe those records referenced above will be stored on that electronic device or storage medium, for at least the following reasons:

a.  Deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a

technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22.    As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the item listed in Attachment A because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.    Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence

13

is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., Internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

23.  Based upon my training and experience, and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I know that during searches, it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a.  Searching computer systems is a highly technical process that requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software, or operating system that is being searched;

b.  Searching computer systems requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a

15

        controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c.    The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d.    Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

24.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

25. I submit that this affidavit supports probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits, and instrumentalities of these offenses, more fully described in **Attachment B**, are located in or at the location described in **Attachment A**. I respectfully request that this Court issue a search warrant

for the location described in **Attachment A**, authorizing the seizure and search of the items described in **Attachment B**.

Respectfully submitted,

Travis Putrah, Special Agent
Homeland Security Investigation

Sworn to and subscribed before me on this _____ day of May, 2026.

_____
HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

17

## ATTACHMENT A

## DEVICE TO BE SEARCHED

A **forensic extraction obtained from a Motorola G 2025** seized from Mark Phillips on or about October 27, 2025, currently in the possession of the Sedgwick County Sheriff's Office located at 141 West Elm, Wichita, Kansas.

18

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

1.      Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

2.      Any and all child erotica, including documents, writings, and images or videos of children that do not qualify as child pornography but evince a sexual interest in children.

3.      Any and all documents, records, or correspondence, in any format or medium, pertaining to operation of the BitTorrent application described in the attached affidavit.

4.      Any and all software, applications, computer related documentation, and passwords, that may be or are used to:

     a.  produce, distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

     b.  seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and

     c.  communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children.

5.      Any and all data or information on the device, which may reveal indicia of ownership, access, or use of the account and websites described in the attached affidavit.

6.      Any and all notes, documents, records and correspondence pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

7.      Any and all documents, records, or correspondence that concern any accounts with an Internet Service Provider.

8.      Any and all records, documents, invoices and materials that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection

19

to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

9. Any and all records, documents, invoices and materials that concern encryption, deletion, or destruction of evidence.

10. Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.

20